UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NINA JEWEL CONKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO.  14-11923-DJC |
| HANNAH FEITELBERG, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON
## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND
## ON DEFENDANT'S MOTION TO COMPEL

November 23, 2015

DEIN, U.S.M.J.

## I.  INTRODUCTION

This case arises out of an automobile accident in which the defendant, Hannah

Feitelberg ("Feitelberg"), struck the rear bumper of a vehicle that was operated by the plaintiff,

Nina Jewel Conklin ("Conklin").  The accident occurred on June 14, 2011 in Oak Bluffs,

Massachusetts.  The plaintiff claims that she suffered a severe back injury, and has become

permanently disabled, as a direct result of the accident.  On April 23, 2014, Conklin filed the

instant action for negligence against Feitelberg pursuant to this court's diversity jurisdiction.  By

her complaint, Conklin is seeking compensation for medical expenses incurred in connection

with the treatment of her physical injuries.  She is also seeking damages for her loss of earning

capacity, emotional distress, pain and suffering, permanent impairment, and loss of enjoyment

of life.

The record establishes that Conklin has a long history of depression, and was taking anti-depressant medication at the time the accident occurred.  It also shows that after the accident, the plaintiff filed a claim with MetLife for disability insurance benefits based partly on symptoms of depression and anxiety.  Additionally, on December 16, 2011, Conklin submitted an application for Social Security Disability Insurance benefits in which she alleged that she was disabled and incapable of working due to a broken foot, a torn disk in her back, chronic back and leg pain, depression and anxiety.  An administrative law judge ("ALJ") ultimately found that Conklin was disabled due to disorders of her lumbosacral spine, and that it was not necessary to consider whether Conklin's emotional and mental impairments also prevented her from working.

During the course of discovery in the instant action, Feitelberg notified the plaintiff that she intended to subpoena records from five of Conklin's mental health providers, including Sally M. Duffy, Ph.D., Anthony Patterson, M.D., Eastover Psychological & Psychiatric Group, Southeast Psych and Charlene Grattan, LCSW.  As set forth in the proposed subpoenas, Feitelberg is seeking to obtain "[c]omplete medical and mental health records reflecting treatment from 6/28/2010 to [the] present" from each of those providers.  The plaintiff maintains that the records sought by each of the subpoenas are privileged under Mass. Gen. Laws ch. 233, § 20B and Mass. Gen. Laws ch. 112, § 135A.  Those statutes protect the confidentiality of communications between a patient and her psychotherapist, as well as communications between a client and her social worker.

The matter is presently before the court on the "Plaintiff's Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) to Prohibit Discovery by the Defendant of Plaintiff's Privileged

Mental Health Records" (Docket No. 29), by which Conklin is seeking an order prohibiting

Feitelberg from obtaining discovery of treatment records from any of her mental health

providers.  In support of her motion, the plaintiff argues that her psychotherapy and counseling

records are privileged under Massachusetts law, and that the privilege has not been waived by

her "garden variety" claims for emotional distress and pain and suffering.  She also argues that

the interests of justice warrant protection of the disputed records because her decision to

pursue therapy and counseling was premised upon an expectation that her communications

with her mental health providers would remain confidential.

　　　The defendant does not dispute that the records at issue fall within the scope of the

statutory privileges.  Nevertheless, she argues that they are discoverable because the plaintiff

has put her mental and emotional condition at issue by claiming permanent impairment and

loss of earning capacity in this action, and by relying upon her mental impairments to support

her claims for disability benefits from MetLife and the Social Security Administration.  More-

over, Feitelberg contends that the interests of justice and fairness weigh in favor of disclosure.

Accordingly, she opposes Conklin's motion for a protective order, and has filed a "Motion to

Compel Discovery" (Docket No. 32), by which she is seeking an order compelling the production

of records relating to the plaintiff's treatment from the five mental health providers identified

in the proposed subpoenas.

　　　After consideration of the parties' written submissions and their oral arguments, this

court finds that the plaintiff has put her mental and emotional condition at issue and made that

condition an element of her claim for damages.  Nevertheless, this court further finds the

documents relating to plaintiff's mental health and treatment that have already been produced

are sufficient, and that it would be inappropriate to order the disclosure of Conklin's treatment records because Feitelberg has not shown, at this stage, that her interest in the production of those records outweighs Conklin's interest in maintaining the confidentiality of her communications with her mental health providers.  Accordingly, and for all the reasons detailed below, the plaintiff's motion for a protective order is ALLOWED and the defendant's cross-motion to compel is DENIED.  However, nothing herein shall be deemed to prohibit the defendant from seeking to introduce the information already produced at trial, at which time the court will rule on its admissibility.  Moreover, this court's rulings shall be WITHOUT PREJUDICE to Feitelberg's ability to renew her motion to compel in the event the plaintiff seeks to call one or more of her mental health providers as a witness or relies on any of the privileged communications to support her claims in this action.

## II.  **DISCUSSION**

### A.    **Scope of the Statutory Privileges**

As described above, Conklin is seeking a protective order pursuant to Mass. Gen. Laws ch. 233, § 20B and Mass. Gen. Laws ch. 112, § 135A.[1]  The first of these statutes establishes a privilege for communications between a patient and her psychotherapist.  It provides in relevant part:

> Except as hereinafter provided, in any court proceeding and in any proceeding preliminary thereto and in legislative and administrative proceedings, a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition.

---

[1]  There is no dispute that in a diversity action such as this one, "state law applies to the instant discovery dispute regarding the existence and possible waiver of the applicable evidentiary privilege."  Sorenson v. H & R Block, Inc., 197 F.R.D. 199, 202 (D. Mass. 2000).

Mass. Gen. Laws ch. 233, § 20B.  The privilege established by this provision is subject to six exceptions.  See Mass. Gen. Laws ch. 233, § 20B(a)-(f).  The exception that is relevant to the facts of the present case provides as follows:

> The privilege granted hereunder shall not apply to any of the following communications:
>
> …
>
> (*c*)  In any proceeding … in which the patient introduces his mental or emotional condition as an element of his claim or defense, *and* the judge or presiding officer finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected.

Mass. Gen. Laws. ch. 233, § 20B(c) (emphasis added).  The second statute, Mass. Gen. Laws ch. 112, § 135A, extends the privilege to communications between a client and a social worker, and "provide[s] the same exception to the privilege as is found in c. 233, § 20B(c)."  Sorenson v. H & R. Block, Inc., 197 F.R.D. 199, 203 (D. Mass. 2000).  In the instant action, there is no dispute that Conklin's communications with her mental health providers fall within the scope of these statutory privileges.[2]  At issue is whether the exception applies in this case.

**B.   Whether the Exception to the Privilege Applies**

In order to determine whether the exception applies to Conklin's claims of privilege, it is necessary to determine: (1) whether the plaintiff has introduced her mental or emotional condition as an element of her negligence claim, and (2) whether Feitelberg's interest in

---

[2] In a Supplemental Memorandum filed in support of her opposition to Conklin's motion for a protective order, Feitelberg argues that the records of Sally Duffy, Ph.D. should be produced because the plaintiff testified that Dr. Duffy specializes in chronic pain patients, and that her sessions with Dr. Duffy were focused primarily on the issue of pain. (Def. Supp. Mem. (Docket No. 38) at 3-4; see also Def. Opp. Mem. (Docket No. 32), Ex. 5 at 128-29). However, Conklin made it clear in her deposition testimony that Dr. Duffy is a psychologist who treated Conklin for her mental impairments and did not have the ability to prescribe medication.  (See Def. Opp. Mem., Ex. 5 at 128-29).  Therefore, the record supports the conclusion that Conklin's communications with Dr. Duffy fall within the scope of the psychotherapist-patient privilege.

disclosure outweighs Conklin's interest in the confidentiality of her privileged communications. See Mass. Gen. Laws ch. 233, § 20B(c); Robart v. Alamo Rent-A-Car, LLC., 19 Mass. L. Rptr. 154, 2005 WL 1009746, at *2 (Mass. Super. Ct. Mar. 16, 2005) (describing two-pronged approach to determining whether exception to privilege applies).  Discovery is only available if both questions are answered in the affirmative.  For the reasons that follow, this court finds while the plaintiff has introduced her mental or emotional condition as an element of her claim, the balance of interests weighs in favor of maintaining the confidentiality of Conklin's privileged communications at this stage in the litigation.

## Waiver

The first question that has been raised by the parties' motions is whether Conklin waived the right to assert a privilege over her mental health records.  "Massachusetts courts have held that a plaintiff seeking damages for emotional distress does not thereby waive the privilege unless there is also an allegation of 'psychological injury which necessitated psychiatric treatment.'"  Sorenson, 197 F.R.D. at 203 (and cases cited).  In other words, "a 'garden variety claim of emotional distress' does not waive the privilege but any claim of 'mental damage,' 'psychic damage' or 'impairment of mental health' will operate as a waiver."  Id. at 204.  Here, Conklin insists that her injuries and damages, "though serious, are in the nature of 'garden variety' claims for emotional distress and pain and suffering[,]" and that she is not asserting a "'psychic injury or psychiatric disorder' as a result of the defendant's negligence[.]"  (Pl. Mot. (Docket No. 29) at 5-6).  Feitelberg, on the other hand, argues that the plaintiff has put her mental and emotional health at issue by seeking lost wages, a diminished earning capacity, and permanent disability as a result of the automobile accident, and by relying on her mental

impairments to support her claims to MetLife and the Social Security Administration.  (Def.

Opp. Mem. at 6-12).

There is no precise formula for distinguishing between a "garden variety" emotional

distress claim and a claim for mental or psychic damage or impairment of mental health.  Some

courts considering the issue of waiver have focused on whether the party opposing disclosure

intends to make affirmative use of the privileged communications by testifying to the substance

of the communications or by calling a mental health provider as a witness in the action.  See

Booker v. City of Boston, Nos. 97-CV-12534-MEL, 97-CV-12675-MEL, 1999 WL 734644, at *1 (D.

Mass. Sept. 10, 1999) (agreeing with cases holding "that the privilege is not waived unless the

plaintiff makes positive use of the privileged material in the prosecution of her case");

Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 230 (D. Mass. 1997) (finding that plaintiff would

waive the privilege if she were to "use the substance of her communication, by calling her

psychotherapist as a witness, for example, or by testifying to the substance of the communica-

tion herself").  However, other courts, including the state courts of Massachusetts, have

focused on the nature of the plaintiff's injury and the damages resulting from it in light of all

the circumstances presented in the litigation.  See, e.g., Linscott v. Burns, 18 Mass. L. Rptr. 685,

2005 WL 351039, at *1-3 (Mass. Super. Ct. Jan. 27, 2005) (finding, based on the record before

the court, that plaintiff had introduced her mental or emotional condition as an element of her

claim for purposes of Mass. Gen. Laws ch. 233, § 20B(c) even though she purported to waive

her claim of mental injury); Donovan v. Prussman, 12 Mass. L. Rptr. 65, 2000 WL 1257463, at *4

(Mass. Super. Ct. Aug. 28, 2000) (finding that plaintiff had alleged a mental impairment, even

though she did not intend to call a mental health professional as a witness in her case, where

7

she alleged an inability to work due to a combination of her physical and mental condition).

This court finds that in a motor vehicle tort action such as this one, it is appropriate to focus on

the nature of the plaintiff's alleged injury and damages, and that under the circumstances of

this case, Conklin has alleged more than a "garden variety" claim for emotional distress by

introducing her mental and emotional condition as an element of her claim.

      In support of her argument that Conklin has put her mental and emotional condition at

issue, Feitelberg relies on the court's analysis in Donovan v. Prussman, a case involving facts

that are nearly identical to the facts presented here.  (See Def. Opp. Mem. at 7-8).  In Donovan,

the plaintiff alleged, following a motor vehicle collision with the defendant, that she had been

unable to work, even on a part-time basis, as a result of her physical injuries, persistent

headaches, loss of memory and inability to concentrate.  Donovan, 2000 WL 1257463, at *1, 4.

As in this case, the record showed that the plaintiff had a history of depression, and that there

was a psychological component to her symptoms.  Id. at *1.  Nevertheless, the plaintiff

maintained that she was only seeking damages for her physical injuries, and did not intend to

call any of her mental health providers as witnesses.  Id. at *4.

      The Donovan court rejected the plaintiff's assertion that she had not put her mental or

emotional condition at issue in that case.  The court found that "the question is not what label a

party assigns to her claim," but rather "the nature of her injury and the damages that allegedly

resulted from it based on a consideration of all the circumstances."  Id.  It further determined

that by claiming that she was incapable of working due to a combination of her physical and

mental conditions, the plaintiff had alleged a mental impairment "and assigned it as a central

element of her claim."  Id.   Accordingly, the Donovan court concluded that the plaintiff had

"introduced her 'mental or emotional condition as an element' of her claim" for purposes of Mass. Gen. Laws ch. 233, § 20B(c).  Id.

This approach has been adopted in other motor vehicle tort actions involving claims of privilege under Massachusetts law.  See Robart, 2005 WL 1009746, at *3 (applying Donovan, and finding that plaintiff had "made her psychiatric disorder a central element of her claim" where plaintiff alleged that her physical injuries and mental anguish resulting from an automobile accident had rendered her incapable of working); Linscott, 2005 WL 351039, at *3 (finding that plaintiff in motor vehicle tort action had introduced her mental or emotional condition as an element of her claim for purposes of the statutory exception to the psychotherapist-patient privilege where plaintiff claimed that she was disabled from working "as a result of the physical injury and the emotional harm she suffered").  Accordingly, this court finds that the Donovan court's analysis is applicable to this case.  This court also finds that the circumstances presented in this action compel the same conclusion.  As described above, Conklin alleges that she has become disabled due to the physical injuries and emotional harm that she suffered as a result of Feitelberg's negligence, and she is seeking to recover damages for permanent impairment and the loss of her earning capacity.  "Thus, she has introduced her 'mental or emotional condition as an element' of her claim within the meaning of G.L. c. 233, § 20B(c)."  Linscott, 2005 WL 351039, at *3.

Conklin's efforts to persuade this court that she has not put her mental or emotional impairments at issue is unavailing.  As described above, courts that have addressed questions of waiver under Massachusetts law have rejected such arguments where, as here, the plaintiff alleges that the combination of her physical and mental injuries "have resulted in her inability

to function well enough to return to work[.]"  Donovan, 2000 WL 1257463, at *4.  See also

Linscott, 2005 WL 351039, at *3 (finding that plaintiff alleged a mental impairment where she

claimed that "she was fully disabled and remains to this day partially disabled as a result of the

physical injury and the emotional harm she suffered").  Moreover, the record in this case

demonstrates that Conklin has relied on her mental impairments, as well as statements from

her mental health providers, to prove that she is disabled.  For example, in support of Conklin's

claim for disability benefits from MetLife, Conklin's treating social worker stated that the

plaintiff was prevented from working due to "[d]epression accompanied by poor focus and

concentration[,]" lack of self-esteem and self-worth, and feelings of hopelessness in addition to

pain.  (Def. Opp. Mem., Ex. 7 at 2).  Similarly, in connection with her claim for benefits from the

Social Security Administration, Conklin submitted evidence from her mental health counselor

indicating that the plaintiff's depression had rendered her disabled.  (Def. Opp. Mem., Ex. 11 at

2).  The ALJ's finding that Conklin was disabled as a result of her physical impairments, and that

it was unnecessary to consider her claim of disabling mental impairments, does not alter the

fact that Conklin relied on her mental condition and presented evidence of that condition to

establish that she was no longer capable of working.  Therefore, the record undermines any

argument that her injuries are solely physical, or that her claim for permanent impairment and

lost earnings in this case involves nothing more than allegations of "garden variety" emotional

pain and suffering.

## Balance of Interests

In order to obtain access to a plaintiff's privileged communications, the defendant must

show, not only that the plaintiff waived the privilege, but also that "it is more important to the

interests of justice that the communication be disclosed than that the relationship between

patient and psychotherapist [or other mental health provider] be protected."  Mass. Gen. Laws

ch. 233, § 20B(c).  This court finds that Feitelberg has failed to make such a showing at this

stage in the litigation.  Therefore, this court declines to order the disclosure of Conklin's mental

health records.

"[T]he interests protected by the recognition of a psychotherapist-patient privilege are

extensive."  Sabree v. United Bhd. of Carpenters, Local No. 33, 126 F.R.D. 422, 425 (D. Mass.

1989).  They include "the private interest that patients have in speaking freely during

psychotherapy, and the public interest in encouraging troubled people to seek therapy."

Vanderbilt, 174 F.R.D. at 227.  In Massachusetts, the courts have acknowledged the value of the

privilege, even in cases where the patient has introduced her mental or emotional condition as

an element of her claim, by declining to order the disclosure of privileged communications

unless:

> (1) the patient calls the psychotherapist as a witness or introduces
> evidence of the communication through her own testimony or otherwise,
> or (2) the party seeking access to the communication makes a specific
> showing that the truth-seeking function of the trial will be seriously
> impaired unless a disclosure of the communication is ordered.

Linscott, 2005 WL 351039, at *3; Donovan, 2000 WL 1257463, at *7.  This court finds that

neither of these requirements has been met in the instant case.

In connection with her motion for a protective order, Conklin has stated that she does

not intend to call her mental health providers as witnesses or introduce her privileged

communications into evidence.  (Pl. Mot. at 1, 3).  She has also indicated that she does not

intend to seek recovery of expenses for mental health treatment, or to make any references to

her psychotherapy or counseling visits during the course of trial.  (Id. at 1, 3, 6).  Therefore, Feitelberg has not established that the first requirement for disclosure has been met.  If Conklin should seek to rely on such evidence in the future, the defendant may renew her motion to compel.

This court also finds that Feitelberg has failed to establish that the truth-seeking function of the trial will be seriously impaired unless the privileged communications between the plaintiff and her mental health providers are disclosed.  Previously, this court ordered the plaintiff to produce non-privileged information concerning her mental health treatment, including the dates of such treatment, the names of her providers, any diagnoses, and the nature of her treatment.  (Docket No. 37 ¶ 2).  Conklin has indicated that she has produced copies of all non-privileged materials that she has obtained from the Social Security Administration, and that she is willing to work with defense counsel in order to obtain any remaining non-privileged records concerning her mental health treatment.  (Pl. Supp. Mem. (Docket No. 39) at 2).  As the defendant's own exhibits demonstrate, the records that have been produced thus far show that Conklin has a history of recurrent depression, and was hospitalized for severe depression when she was in her 20s.  (See Def. Opp. Mem., Ex. 10 at 2-3).  Feitelberg can rely on this evidence, as well as any other non-privileged mental health records, to "probe the [plaintiff's] credibility" and inquire into her past "'for the purpose of showing that [her] emotional distress was caused at least in part by events and circumstances that were not related to the alleged acts of the defendant[ ].'"  Booker, 1999 WL 734644, at *1 (quoting Sidor v. Reno, No. 95 CIV 9588(KMW), 1998 WL 164823, at *1-2 (S.D.N.Y. Apr. 7, 1998)) (punctuation omitted).  Accordingly, Feitelberg has not demonstrated "that it is more

important to the interests of justice that the communication[s] be disclosed than that the relationship between patient and [her mental health providers] be protected," or that the allowance of a protective order in these circumstances would otherwise be unfair. <u>Donovan</u>, 2000 WL 1257463, at *7 (quoting Mass. Gen. Laws ch. 233, § 20B(c)). <u>See</u> <u>also</u> <u>Booker</u>, 1999 WL 734644, at *1 (finding that denial of motion to compel disclosure of plaintiffs' psychological records was not unfair to the  defendants where defendants could rely on non-privileged information regarding plaintiffs' psychotherapy treatment to support their defense).

### III.  <u>CONCLUSION</u>

For all the reasons detailed herein, the "Plaintiff's Motion for Protective Order Pursuant to Fed. R. Civ. P. 26(c) to Prohibit Discovery by the Defendant of Plaintiff's Privileged Mental Health Records" (Docket No. 29) is ALLOWED, and the defendant's "Motion to Compel Discovery" (Docket No. 32) is DENIED.  However, these rulings shall be WITHOUT PREJUDICE to Feitelberg's ability to renew her motion to compel in the event the plaintiff seeks to call one or more of her mental health providers as a witness or relies on a privileged communication to support her claims in this action.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge